UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITIGROUP INC.,

                    Plaintiff,

              - against -

ABU DHABI INVESTMENT AUTHORITY,

                    Defendant.

No. 13-cv-6073 (PKC)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S (1) MOTION TO DISMISS COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6); AND (2)MOTION TO COMPEL ARBITRATION**

Peter E. Calamari, Esq.
Fred G. Bennett, Esq.
Tai-Heng Cheng, Esq.
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Defendant*
*Abu Dhabi Investment Authority*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................1

STATEMENT OF UNDISPUTED FACTS ..........................................................................3

ARGUMENT ..................................................................................................5

I.   CITI'S COMPLAINT AND PRELIMINARY INJUNCTION MOTION
     VIOLATE AND ARE CLEARLY REFUTED BY THE FEDERAL
     ARBITRATION ACT ..................................................................................5

II.  CASE LAW FROM THE SECOND CIRCUIT—WHICH CITI FAILS TO CITE
     IN ITS COMPLAINT OR PRELIMINARY INJUNCTION MOTION—
     INCLUDING AN ADVERSE DECISION WHICH IS CONTROLLING AND
     *DIRECTLY ON POINT*—HOLDS THAT THE ARBITRATION TRIBUNAL
     HAS EXCLUSIVE JURISDICTION TO DECIDE CITI'S *RES JUDICATA*
     DEFENSE. ..............................................................................................7

     A.   Citi's action and preliminary injunction motion are fatally undermined by
          the Second Circuit's controlling decision in *Nat'l Union Fire Ins. Co. of
          Pittsburgh v. Belco Petroleum Corp.,* which is directly on point.  Citi fails
          to cite or discuss this case in any of its filings. ...............................................8

     B.   Citi has grossly misconstrued a second controlling Second Circuit case,
          which extended the Court's holding in *Nat'l Union.* ...........................................11

     C.   Citi also has failed to cite or consider other Second Circuit and district
          court case law that follows and reaffirms *Nat'l Union* and *U.S. Fire.* ..................13

          1.   Citi has failed to cite or consider other relevant Second Circuit
               case law post *Nat'l Union.* .......................................................................13

          2.   Citi has failed to cite or consider other relevant federal district
               court cases post *Nat'l Union.* ...................................................................14

          3.   The only circuit court decision (from the Third Circuit) cited by
               Citi to support a court's jurisdiction to decide a *res judicata*
               defense to an arbitration claim in fact refutes it.........................................15

III. THE ARBITRATION CLAUSE OF THE INVESTMENT AGREEMENT
     UNQUESTIONABLY ENDOWS THE ARBITRATORS WITH EXCLUSIVE
     JURISDICTION TO DECIDE A *RES JUDICATA*, OR ANY OTHER LEGAL
     DEFENSE. ..............................................................................................16

IV.    THE CASES CITI DOES CITE IN SUPPORT OF ITS JURISDICTIONAL *RES JUDICATA* ARGUMENT EITHER PRECEDED AND HAVE BEEN EFFECTIVELY OVERRULED BY *NAT'L UNION* AND *U.S. FIRE*, OR ARE COMPLETELY INAPPOSITE. ...................................................................18

    A.    Cases cited by Citi that have been effectively overruled by *Nat'l Union* and *U.S. Fire.* ..............................................................................................18

    B.    Cases cited by Citi that post-date *Nat'l Union* and *U.S. Fire.* ...............................19

V.    CITI'S ARGUMENT THAT THE COURT IS EMPOWERED TO DECIDE CITI'S *RES JUDICATA* DEFENSE TO "PRESERVE AND PROTECT ITS FINAL JUDGMENTS" IS A  RED-HERRING, COMPLETELY DEVOID OF LEGAL SUPPORT. ...................................................................21

CONCLUSION ............................................................................................22

## TABLE OF AUTHORITIES

**Page**

### Cases

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2011)..................................................................................20

*AT&T Mobility v. Gonnello*,
  No. 11-CV-5636 PKC, 2011 WL 4716617 (S.D.N.Y. Oct. 7, 2011) ....................10

*Burmah Oil Tankers Ltd. v. Trisun Tankers Ltd.*,
  687 F. Supp. 897 (S.D.N.Y. 1988) .......................................................................19

*Emilio v. Sprint Spectrum, L.P.*,
  315 F. App'x 322 (2d Cir. 2009) ...........................................................................13

*Emilio v. Sprint Spectrum, L.P.*,
  No. 08-CV-7147 BSJ, 2008 WL 4865050 (S.D.N.Y. Nov. 6, 2008) ....................13

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)................................................................................10, 11, 13

*Furchgott-Roth v. Wilson*,
  No. 09-CV-9877 PKC, 2010 WL 3466770 (S.D.N.Y. Aug. 31, 2011) ..................10

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002).................................................................................................14

*JML Indus. v. Soltz-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004) ..................................................................................10

*Jock v. Sterling Jewelers, Inc.*,
  No. 08-CV-2875 JSR, 2010 WL 5158617 (S.D.N.Y. Dec. 10, 2010) ..................20

*John Hancock Mut. Life Ins. Co. v. Olick*,
  151 F.3d 132 (3d Cir. 1999)..............................................................................16, 17

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  500 F.3d 111 (2d Cir. 2007)...................................................................................20

*Kuruwa v. Am. Arbitration Ass'n*,
  No. 13-CV-2419 PKC, 2013 WL 2433068 (S.D.N.Y. June 3, 2013).....................10

*Lito Shipping Corp. v. Pioneer Petroleum Prods., Inc.*,
  No. 93-CV-778 JSM, 1997 WL 160321 (S.D.N.Y. Apr. 3, 1997) ...................14, 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)...................................................................................................14

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Las Vegas Prof'l Football Ltd.*,
  No. 09-CV-7490 PKC, 2009 WL 4059174 (S.D.N.Y. Nov. 17, 2009)...................10

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*,
    88 F.3d 129 (2d Cir. 1996)................................................................................ passim

*In re New Jersey Boom & Erectors, Inc.*,
    No. 00-CV-7812 RLC, 2001 WL 357087 (S.D.N.Y. Apr. 9, 2001).....................................15

*New York Hotel & Motel Trades Council v. Hotel St. George*,
    988 F. Supp. 770 (S.D.N.Y. 1997) ..................................................................................15

*Pontier v. U.H.O. Mgmt. Corp.*,
    No. 10-CV-8828 RMB, 2011 WL 1346801 (S.D.N.Y. Apr. 1, 2011)...................................15

*Transit Mix Concrete v. Local Union No. 282*,
    809 F.2d 963 (2d Cir. 1987).............................................................................................10

*U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*,
    101 F.3d 813 (2d Cir. 1996)....................................................................................... passim

*In re Y & A Grp. Sec. Litig.*,
    38 F.3d 380 (8th Cir. 1994) ..............................................................................................20

*Washington v. William Morris Endeavor Entm't LLC*,
    No. 10-CV-9647 PKC, 2011 WL 3251504 (S.D.N.Y. July 20, 2011) ...................................10

## Statutes

Federal Arbitration Act, 9 U.S.C. §1 *et seq.* (2012) ................................................................. passim

All Writs Act, 28 U.S.C. § 1651(a) (2012)...........................................................................2, 22

Fed. R. Civ. P. 12(b)(1)................................................................................................................1

Fed. R. Civ. P. 12(b)(6)............................................................................................................1, 15

## INTRODUCTION AND SUMMARY OF ARGUMENT

This memorandum is submitted in support of motions made by the defendant in this action, the Abu Dhabi Investment Authority ("ADIA") (i) to dismiss the complaint filed by Citigroup ("Complaint") for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and for failure to state a claim upon which relief can be granted under FRCP 12(b)(6); and (ii) to compel arbitration of the issues raised by Citi in the Complaint and accompanying motion for preliminary injunction ("Preliminary Injunction Motion").

ADIA's motions are supported by express provisions of the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2012)) ("FAA"), an established line of case law within the Second Circuit, including a controlling case directly on point (*Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129 (2d Cir. 1996), which Citi has not cited or discussed anywhere in its Complaint or Preliminary Injunction Motion), and undisputed facts relating to the negotiated arbitration agreement between the parties.  As discussed more fully below, this authority and evidence clearly establish the following:

(i)     Under the FAA (on which Citi in part bases its Complaint and Preliminary Injunction Motion), the Court's power with regard to ordering or enjoining arbitration is strictly limited to determining whether the parties have entered into a valid arbitration agreement and/or failed to comply with it.  (FAA § 4; *see also id.*, § 3).  The FAA does not endow the court with any power to decide legal defenses to any arbitration claim;

(ii)     As Citi's Complaint and Preliminary Injunction Motion expressly acknowledge, there is no dispute that the parties entered into a valid arbitration agreement.  Likewise, it is self-evident that Citi's action is not an attempt to force compliance with the arbitration agreement, but rather to *prevent* ADIA from doing so by raising a *res judicata* defense, based on a prior arbitration proceeding between the parties;

(iii)    The Second Circuit has clearly held—beginning with the *National Union* case, which is directly on point—that *res judicata* is a legal defense to an arbitration claim, and therefore within the exclusive jurisdiction of the arbitrators—not the court—to decide, unless the arbitration agreement between the parties provides otherwise "with positive assurance";

(iv)    The arbitration clause of the Investment Agreement which the parties negotiated is a very broadly worded clause which obviously was intended to encompass any legal defense to an arbitration claim, including the defense of *res judicata*.  This is further demonstrated by the limited exception the parties carved out for disputes that would not be subject to arbitration—the exception does not refer to or in any way encompass a *res judicata* defense to an arbitration claim;

(v)    the All Writs Act, to which Citi refers as a basis for its Complaint, cannot rationally be interpreted as grounds for a court—rather than an arbitral tribunal—to decide Citi's *res judicata* defense.  By its express terms, the All Writs Act (28 U.S.C. § 1651(a)) does nothing more than empower the court to "issue all writs necessary or appropriate in aid of their respective jurisdictions."  The Act has no relevance to a dispute—such as this one—over whether the court has jurisdiction to decide an issue in the first instance, and no case within the Second Circuit remotely suggests that the Act can be so interpreted;

(vi)    Citi fails to even cite, much less discuss, Sections 3 and 4 of the FAA, as well as *on point* Second Circuit law and related case decisions which are fatal to Citi's Complaint and Preliminary Injunction Motion. Instead, Citi relies on the All Writs Act and district court cases that either have been effectively overruled by the Second Circuit, do not address  the *res judicata* jurisdictional issue, or—if they do—in fact lend further support to ADIA's motions.

These factors, in combination, virtually mandate the granting of ADIA's motion to dismiss and motion to compel arbitration.  Indeed, they demonstrate that Citi's Complaint and Preliminary Injunction Motion are contrary to established principles of existing law, and border on the frivolous.

## STATEMENT OF UNDISPUTED FACTS

ADIA's motions are based on the following undisputed facts:

1.      On or about November 26, 2007, the parties entered into an Investment Agreement ("Investment Agreement"), which provided for ADIA to make a $7.5 billion dollar investment in Citi, in consideration for the issuance of securities known as "Equity Units." ADIA was required to later convert the "Equity Units" into common shares of Citi in accordance with a specific pricing mechanism and timetable.  (Compl. ¶ 2; Declaration of Leslie Gordon Fagen in support of Citi's Motion for Prelim. Inj. ("Fagen Dec.") Ex. D).

> 2.      The Investment Agreement contains a binding arbitration provision, which states, in relevant part: If the Company [Citigroup] and the Investor [ADIA] each a "*Disputing Party*" cannot resolve <u>any dispute that arises out of or relates to the Transaction Documents</u>, or the breach thereof, within 30 calendar days after written notice of the dispute specifying in reasonable detail the nature of the dispute is first given, such dispute will be decided by arbitration administered by the American Arbitration Associations in accordance with its International Arbitration Rules then in effect . . . . [Emphasis added].

"Transaction Documents" is a defined term that includes the Investment Agreement (Fagen Dec. Ex. D, at Recitals, sec. C.).

3.      The wide breadth of disputes to be resolved under the arbitration clause of the Investment Agreement is subject to a single, negotiated exception, which states:

> . . . *except that* (i) Article 37 of the International Arbitration Rules of the American Arbitration Association will not apply and (ii) a Disputing Party seeking a temporary restraining order, or an order to maintain the status quo or to prevent irreparable harm (such remedies being  "*Interim Measures*") shall only seek such remedy through court proceedings in accordance with Section 5.7 and

shall not seek such remedy through arbitration as provided under this Section 5.6. [Emphasis original]

4.      By its clear terms, the exception applies only to "*Interim Measures*" that may be sought be either party while the arbitration is pending, not to a challenge of a party's right to initiate or maintain an arbitration in the first instance.  The first part of the exception—Article 37—sets forth a procedure for obtaining emergency interim relief after the arbitration has been filed but before the tribunal has been constituted.  The second part of the exception deals only with "*Interim Measures*" which any party might seek during the pendency of an arbitration.

5.      On December 15, 2009, ADIA initiated an arbitration against Citi under the Arbitration Clause of the Investment Agreement. (Compl. ¶ 2; Fagen Dec. Ex. J). ("ADIA I"). The tribunal issued a final award ("Award") in the arbitration on October 14, 2011 (Compl. ¶ 2; Fagen Dec. Ex. A).  As the Award reflects, Citi never challenged the legal validity of the arbitration clause or asserted that it was not bound by the clause.

6.      On August 20, 2013, ADIA filed a Notice of Arbitration against Citi with the International Center for Dispute Resolution ("ICDR") of the American Arbitration Association ("AAA"), for material breach by Citi of the Investment Agreement, including claims for breach of contract and breach of the implied covenant of good faith and fair dealing ("ADIA II"). (Compl. ¶¶ 36-42; Fagen Dec. Ex. L).

7.      The Complaint contains a single cause of action, entitled "First Cause of Action and Requests for Relief" (Compl. p. 12).  It alleges that the ADIA II arbitration is precluded by the principle of *res judicata*, since the ADIA II claims purportedly could have been brought and in fact were "in significant part" brought and arbitrated in ADIA I, and that ADIA II seeks "essentially the same relief" as was sought in ADIA I. (Compl. ¶¶ 53-55).  The relief sought includes (i) a declaratory judgment that "ADIA's proposed arbitration against Citi is foreclosed

by the Court's final judgment confirming the award in the First Arbitration"; and (ii) "an order permanently enjoining ADIA . . . from initiating or proceeding with its arbitration against Citigroup." (Compl. p. 14).

       8.     Consistent with the Complaint, Citi's Preliminary Injunction Motion argues that ADIA II is barred by *res judicata* (Preliminary Injunction Memorandum of Law ("Preliminary Injunction Memorandum"), pp. 12-20, and cases cited therein), and seeks a preliminary injunction prohibiting ADIA from proceeding with ADIA II pending a hearing for a permanent injunction (Preliminary Injunction Memorandum, p. 24).

       9.     Although Citi alleges that the Complaint is brought pursuant to the Federal Arbitration Act ("FAA") (Compl. ¶ 1), and that the court has the power to "enjoin an arbitration" under the FAA (Compl. ¶ 47), neither the Complaint or Citi's Preliminary Injunction papers identify any section of the FAA that specifically addresses the power of a court to enjoin an arbitration on *res judicata* grounds or authorizes it to do so.

      10.     All case authorities cited by Citi in support of its argument that the Court has jurisdiction to enjoin the ADIA II arbitration on *res judicata* grounds are set forth in Citi's Preliminary Injunction Memorandum (Preliminary Injunction Memorandum, pp. 21-22).

<u>ARGUMENT</u>

**I.    <u>CITI'S COMPLAINT AND PRELIMINARY INJUNCTION MOTION VIOLATE AND ARE CLEARLY REFUTED BY THE FEDERAL ARBITRATION ACT</u>**

      Citi purports to bring its claim, at least in part, under the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*) (Compl. ¶ 1), which Citi asserts gives the Court the power to enjoin the ADIA II arbitration on *res judicata* grounds (Compl. ¶ 47).

      However, the FAA not only does not support Citi's position, it squarely refutes it. Citi fails even to specify in its Complaint any particular provision of the FAA on which it relies. In

5

its Preliminary Injunction Memorandum, Citi's sole basis for its FAA argument is Section 13, which simply provides that a judgment entered as a result of a petition to confirm an arbitration award "has the same force and effect, in all respects," as a "judgment in an action," and "may be enforced as if it had been rendered in an action in the court in which it was entered."  Section 13 does not address the scope of a court's powers to decide arbitration claim defenses (such as *res judicata*) under the FAA.  ADIA is not challenging the enforceability of the judgment entered on the ADIA I Award in ADIA II.[1]

More significantly, Citi has failed to cite or discuss the one provision of the FAA that does set clear parameters of the court's jurisdiction to decide arbitration defenses—FAA Section 4.  Section 4 of the FAA gives a party "aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration" the right to petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  This of course is the basis for ADIA's motion to compel arbitration.  However, where "the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is *mandated* "to make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."[2]

The jurisdictional mandate of FAA Section 4 is indisputably applicable here.  Citi never suggested in ADIA I, and has not suggested in this action, that the arbitration clause of the Investment Agreement (pursuant to which ADIA has brought its ADIA II arbitration claim (Fagen Dec. Ex. L)), is not valid and legally binding on Citi.  And Citi certainly does not allege

---

[1]   ADIA has appealed the judgment confirming the ADIA I award, (now pending in the Second Circuit), but the subject of the appeal is separate and distinct from ADIA II.

[2]   Consistent with Section 4, Section 3 of the FAA requires the court to stay an action "upon being satisfied that the issue included in the suit or proceeding is referable to arbitration under [a written arbitration] agreement."

that ADIA has failed to comply with the arbitration agreement—to the contrary, Citi seeks to prevent ADIA from doing so.

The limited circumstances in which a court is empowered  to make arbitration-related orders under FAA Section 4 obviously does not encompass deciding the merits of a legal defense—such as *res judicata*—to an arbitration proceeding that has been brought under a legally valid arbitration clause; and no other Section of the FAA provides—or even remotely suggests—that the court has such power.  As discussed below, Courts within the Second Circuit have universally recognized that the FAA creates a strong presumption in favor of arbitration that the courts must honor by strictly limiting their involvement in the arbitration process as the FAA provides.

## II.    CASE LAW FROM THE SECOND CIRCUIT—WHICH CITI FAILS TO CITE IN ITS COMPLAINT OR PRELIMINARY INJUNCTION MOTION— INCLUDING AN ADVERSE DECISION WHICH IS CONTROLLING AND *DIRECTLY ON POINT*—HOLDS THAT THE ARBITRATION TRIBUNAL HAS EXCLUSIVE JURISDICTION TO DECIDE CITI'S *RES JUDICATA* DEFENSE.

The only case authorities cited by Citi in support of its position that the Court has jurisdiction to decide whether ADIA II is barred by *res judicata* are set forth on pages 21-22 of the Preliminary Injunction Memorandum.   However, with one exception (which Citi misinterprets) Citi fails to cite or discuss a line of controlling authority—most notably a Second Circuit decision that is directly on point—which establishes beyond question that *res judicata* is a legal defense to an arbitration, that, like any other legal defense, must be resolved by an arbitration tribunal, not the court.  The only recognized exception to this rule is if the arbitration agreement between the parties provides "with positive assurance" that the *res judicata* (or other) defense is to be decided by the court, which concededly is not the case here.

**A.**      **Citi's action and preliminary injunction motion are fatally undermined by the Second Circuit's controlling decision in *Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*, which is directly on point.  Citi fails to cite or discuss this case in any of its filings.**

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp., supra,* 88 F.3d 129, entirely defeats Citi's action.  The facts of *Nat'l Union* are a *mirror image* of those in issue with respect to ADIA's two motions.  The defendant (Belco) filed a claim with its insurers to recover losses from the expropriation of Belco's oil exploration and development activities in Peru by the Peruvian government.  This triggered an arbitration claim under the policy by certain insurers (including National Union) to rescind the policy, and a counterclaim by Belco to recover on its claim.  The policy provided that arbitration disputes were to be governed by New York law.

The arbitrators issued a final award rejecting the claim and awarding Belco damages on its counterclaim.  The arbitration award was confirmed and a final judgment issued by the New York Supreme Court.

Belco then made an additional coverage claim for its loss under a separate maritime policy.  This triggered a second arbitration demand from National Union under the arbitration clause of its policy, seeking to recover a share of any proceeds that Belco obtained under the maritime policy (based on a provision of the National Union policy which allowed for such recovery).

*Just as Citi has done here*, Belco responded by filing an action in federal district court in Texas, seeking a declaratory judgment that National Union's claim was barred by *res judicata*, arising out the prior arbitration and resulting judgment.

*Just as ADIA has done here*, National Union then moved to compel arbitration in New York state court.  The action was later removed to federal court, and Belco's Texas action and National Union's action were consolidated in the S.D.N.Y.

In response to National Union's motion to compel arbitration, Belco argued—*just as Citi does here*—that the preclusive effect of the prior arbitration had to be decided by court, not an arbitrator.  However, the Second Circuit, reviewing the issue *de novo*, rejected this argument, holding as follows:

(i)     First, the Court held that since the insurance policies were transactions that affected international commerce—as is the case with the Investment Agreement here—the petition to compel arbitration had to be decided under the FAA.  (*Id.* at 133.), which the Court held creates a "federal substantive law" of arbitrability (*Id.*);

(ii)     Second, the Court cited its holding in *Transit Mix Concrete v. Local Union No. 282*, 809 F.2d 963 (2d Cir. 1987), as being  "directly on point."  In *Transit*, which involved a labor arbitration under a collective bargaining agreement, the Court ruled in response to a motion to stay the arbitration on *res judicata* grounds that "the preclusive effect of the prior arbitration award had to be decided in the later arbitration" (*Nat'l Union*, 88 F.d at 133.).  The Court then extended *Transit* to the commercial context, holding that the  "FAA expresses a strong federal policy in favor of arbitration in maritime and commercial disputes, and ambiguities as to the scope of an arbitration clause must be resolved in favor of arbitration."  (*Id.*);[3]

(iv)     Citing FAA Section 4, the Court affirmed that the only decisions a court is authorized to make as to whether an arbitration may proceed is "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the

---

[3]    This Court has also recognized the strong federal policy favoring arbitration in several of its decisions:  *AT&T Mobility v. Gonnello*, 11 Civ 5636, 2011 WL 4716617 (Oct. 7, 2011) ("[T]he Court is mindful of the 'strong federal policy favoring arbitration as an alternative means of dispute resolution'") (quoting *JML Indus v. Soltz-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004); *Washington v. William Morris Endeavor Entertainment LLC*, 10 Civ. 9647, 2011 WL 3251504, *3 (July 20, 2011)); *National Union Fire Ins. Co. of Pittsburgh v. Las Vegas Professional Football Ltd.*, 2009 WL 4059174 (Nov. 17, 2009)).

particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." (*Id.* at 135.).  The Court also recognized that under  the U.S. Supreme Court's landmark decision in *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995) a court would be empowered to decide these discrete issues unless there is "clear and unmistakable evidence" that the parties intended the arbitrators to do so. (*Nat'l Union,* 88 F.3d at 135.)[4]

(v)   Against this legal framework, the Second Circuit's penultimate holding was that preclusion is *not* an issue of arbitrability, but a *legal defense* to the arbitration claim, and as such should be decided by the arbitrators, just like any other legal defense:

> The preclusion issue is not, in the words of *First Options,* a disagreement over "whether [the parties] agreed to arbitrate the merits" of their dispute. <u>Belco's claim of preclusion is a legal defense to National Union's claim.  As such, it is itself a component of the dispute on the merits.</u>  Belco's attempt to characterize the preclusion issues as not related to the merits is unavailing.  It is as much related to the merits as any affirmative defenses such as a time limit in the arbitration agreement or laches, which are assigned to an arbitrator under a broad arbitration clause similar to the one in the [policy at issue].

(*Id.* at 135-36 (citations omitted and emphasis added).)   The Court added that the relevant arbitration clause—which reads almost identically to the clause in the Investment Agreement— was indeed broad enough to cover any preclusion issue raised as a defense:

> [T]he arbitration provision in the AIG policy is sufficiently broad to encompass disputes about what was decided in a prior arbitration.  The provision covers "[a]ll disputes which may arise under or *in connection with* this policy" (emphasis added), and is not limited, as Belco contends, to disputes that require an interpretation of the AIG policy. We do not believe that the arbitration clause is

---

[4]   This Court has adopted the same reasoning in cases which it has decided, including *Furchgott-Roth v. Wilson,* 09 Civ. 9877, 2010 WL 3466770 (Aug. 31, 2011) (dismissing complaint in favor of arbitration and denying motion to stay arbitration, after finding that the parties had made a valid agreed to arbitrate, and that the  dispute fell within the broadly worded arbitration agreement.  *See also, Kuruwa v. American Arbitration Association,* 13 Civ. 2419, 2013 WL 2433068, *8 (June 3, 2013) ("The FAA does not invest district courts with plenary review power over interlocutory rulings on matters of pre-hearing discovery by arbitrators. Post award, either party may bring proceedings to confirm, vacate or modify an award . . ."))

ambiguous, but even if it were, the FAA would require resolving any ambiguity in favor of arbitration.

(*Id.* at 136.)

It is obvious that *Nat'l Union* is on *all fours* with the facts at issue here, and mandates the dismissal of Citi's Complaint with prejudice and the granting of ADIA's motion to compel arbitration.  It is equally surprising that Citi makes no reference to *Nat'l Union* anywhere in its Complaint or Preliminary Injunction papers, despite its obligations under Federal Rule of Civil Procedure 11 (discussed below).

**B.     Citi has grossly misconstrued a second controlling Second Circuit case, which extended the Court's holding in *Nat'l Union.***

Citi has cited to and summarily discussed (in a footnote of its Preliminary Injunction Memorandum, p. 22 n.8) another highly relevant Second Circuit case—*U.S. Fire Ins. Co. v. National Gypsum Co.*, 101 F.3d 813 (2d Cir. 1996)—but has materially misconstrued its holding.

In *U.S. Fire*, the Second Circuit expressly *extended* its holding in *Nat'l Union* to the *res judicata* effect of a prior federal court judgment—not arising out of an arbitration award—on a subsequent arbitration.  *U.S. Fire* involved insurance policies with an asbestos producer which contained a broad arbitration clauses requiring that "any disputed issues within the scope of the Agreement and Appendices hereto" be resolved by binding arbitration.  However, the Agreement provided that only bodily injury claims would be subject to arbitration—property damage claims were not included.

In accordance with the policies, a group of insurers filed an action against other insurers seeking declaratory relief concerning defense costs on certain property damages claims. Subsequently, the court issued a partial final judgment absolving plaintiffs for liability for defense costs.  Judgment was entered and an appeal taken.

Another insurer later filed an arbitration claim under the policy for payment of defense costs concerning bodily injury claims.  U.S. Fire responded by filing an action in federal court seeking a preliminary injunction against further arbitration proceeding on grounds that the prior judgment denying liability for defense costs for property damage claims precluded similar claims for bodily injury.

The Second Circuit followed its rationale in *Nat'l Union* to the letter, first holding that the strong presumption favoring arbitration under the FAA required that arbitration clauses "are to be construed as broadly as possible" (*Id.* at 816), and that the broadly worded clause under the policy clearly encompassed determination of the *res judicata* defense, making the court's limited power to decide arbitrability under FAA Section 4 and *First Options* inapplicable.  (*Id.* at 817).  Importantly, the Court explained the consistency of its holding with *Nat'l Union*:

> Our decision is consistent with our recent holding that the issue-preclusive effect of a prior arbitration is arbitrable and so must be arbitrated.  (*Belco,* 88 F.3d at 135-36).  In *Belco* we rejected the argument that issue preclusion is not related to the merits of an agreement and nonarbitrable, noting that "Belco's claim of preclusion is a legal defense to National Union's claim.  As such it is itself a component of the dispute on the merits" *Belco,* 88 F.3d at 135.  <u>Although the present case involves the issue-preclusive effect of a prior judgment, Wellington's arbitration clause covers "any disputed issues within its scope."  Thus, a defense based on the issue-preclusive effect of the prior judgment is part of the dispute on the merits."</u>

(*U.S. Fire*, 101 F.3d at 817 (emphasis added).)  In its Preliminary Injunction Memorandum (p. 22 n.8), Citi attempts to dismiss *U.S. Fire* on the grounds that although it did address the *res judicata* effect of a final federal judgment on a subsequent arbitration, the prior judgment was not one that sprang from confirmation of a prior arbitration award.  This makes Citi's failure to make any reference to *Nat'l Union* all the more astonishing, since *Nat'l Union* dealt with this exact issue and was the basis for the Court's decision in *U.S. Fire*.

C.   **Citi also has failed to cite or consider other Second Circuit and district court case law that follows and reaffirms *Nat'l Union* and *U.S. Fire.***

1.   Citi has failed to cite or consider other relevant Second Circuit case law post *Nat'l Union.*

Citi also makes no reference in its Complaint or Preliminary Injunction filings to *Emilio v. Sprint Spectrum, L.P.*, 315 F. App'x 322 (2d Cir. 2009). In *Emilio*, the district court granted a motion to compel arbitration and enjoined appellant from proceeding in Kansas state court to enjoin the arbitration on *res judicata* grounds. The district court based its decision on the holding in *U.S. Fire* that "an arbitrator should decide the preclusive effect of the prior judgment, because preclusion is a merit-based defense to arbitration" (*Emilio v. Sprint Spectrum, L.P.*, No. 08-CV-7147 BSJ, 2008 WL 4865050, at *2 (S.D.N.Y. Nov. 6, 2008).) The Second Circuit affirmed, and in the process also rejected appellant's argument that *res judicata* is a "gateway issue" which the court should decide before the parties are forced to arbitrate:

> Sprint next argues that a court, instead of an arbitral forum, should have resolved the question of whether the Kansas order barred arbitration under the doctrine of *res judicata.* Although there is a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), there is an exception to this policy in those "narrow circumstance[s] where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). That narrow exception *does not apply* in this case because the parties clearly intended for the arbitrator to decide a defense of *res judicata.* Sprint, a sophisticated business entity, agreed to "arbitrate any and all claims, controversies or disputes . . . arising out of or relating to" its agreement with Emilio.

(315 F. App'x at 324 (emphasis added).)

> 2.    Citi has failed to cite or consider other relevant federal district court cases post *Nat'l Union.*

Citi also fails to make any reference in its Complaint or Preliminary Injunction Motion to relevant federal district court decisions within the Second Circuit decided in the wake of *Nat'l Union* and *U.S. Fire*.  These important cases include the following:

(i)    In *Lito Shipping Corp. v. Pioneer Petroleum Products, Inc.*, No. 93-CV-778 JSM, 1997 WL 160321 (S.D.N.Y. Apr. 3, 1997), the district court relied on both *Nat'l Union* and *U.S. Fire* in holding that the preclusive effect of a prior demurrage arbitration on a later demurrage arbitration claim seeking additional relief must be decided by the arbitrators, not the court:

> According to the Second Circuit in *National Union Fire Ins. Co. v. Belco Petroleum Corp.,* 88 F.3d 129, 135–36 (2d Cir.1996), the *res judicata* effect of a prior arbitration is arbitrable and so must be arbitrated. Even more recently in *United States Fire Ins. Co. v. National Gypsum Co.,* 101 F.3d 813, 816 (2d Cir.1996), the Court of Appeals agreed that "issue preclusion, like other defenses to arbitrability, is arbitrable, and, because issue preclusion can be arbitrated, it must be arbitrated." . . . [T]he Second Circuit ruled that the question of issue preclusion should have been decided by the arbitrators and not the Court . . . Thus, as for Pioneer, the Second Circuit law established in *Belco* and *National Gypsum* mandate that the *res judicata* effect of the original arbitration award between petitioners and Pioneer must be decided by the arbitrators, not the district court.

*Id.,* 1997 WL 160321, at *2.

(ii)    *Pontier v. U.H.O. Mgmt. Corp.*, No. 10-CV-8828 RMB, 2011 WL 1346801 (S.D.N.Y. Apr. 1, 2011) (Court follows *Nat'l Union* and *U.S. Fire* in addressing motion by defendants seeking to either compel arbitration of plaintiffs' claims or dismiss them on grounds of *res judicata* effect of a previous arbitration, holding that "Defendants' *res judicata* motion raised in its Fed.R.Civ.P. 12(b)(6) motions, are to be resolved by the arbitrator");

(iii)    *In re New Jersey Boom & Erectors, Inc.*, No. 00-CV-7812 RLC, 2001 WL 357087 (S.D.N.Y. Apr. 9, 2001) (Citing *U.S. Fire*, court holds that petitioners' motion to preclude respondents from filing an arbitration on grounds of *res judicata* fails on the merits,

14

since courts' role in the context of arbitration disputes is limited to determining (1) whether there is a valid arbitration agreement and (2) whether the dispute is one which is covered by that arbitration agreement; if these conditions are satisfied, then matters "reaching the merits of the dispute. . . including [respondents'] *res judicata* argument . . . are to be resolved by the arbitrator")

(iv)   *New York Hotel & Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770 (S.D.N.Y. 1997) (court cites *Nat'l Union* in rejecting attempt by petitioner to prevent confirmation of an arbitration award on *res judicata* grounds, holding that "permitting a party to litigate the *res judicata* effect of a prior arbitration award before a court—rather than before an arbitrator—is inconsistent with the proposition that arbitrators have broad discretion to determine the precedential or preclusive effect, if any, to be awarded an issue or claim decided in a prior arbitration"; further, that the court "is not permitted—even at [the confirmation] stage of the dispute—to substitute its judgment for that of the arbitrator").

3.   The only circuit court decision (from the Third Circuit) cited by Citi to support a court's jurisdiction to decide a *res judicata* defense to an arbitration claim in fact refutes it.

Citi cites, without discussion, *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 139 (3d Cir. 1999) to support its argument that the court must decide a *res judicata* issue pertaining to a pending arbitration. (Preliminary Injunction Memorandum, p. 22). This citation is also misconstrued.

In *John Hancock*, the Third Circuit was faced with two issues—the *res judicata* impact of a prior federal judgment and a prior arbitration award. Ultimately, the court held that it would decide the *res judicata* impact of the prior federal judgment on the arbitration, but that petitioner's *res judicata* objection based on a the prior arbitration was "an issue to be arbitrated and not decided by the courts." As such, the holding is exactly in line with *Nat'l Union*,

although it does not go as far as *U.S. Fire*.  However,  the court was careful to explain that the

rule of law in the Second Circuit under U.S. Fire *would compel a different result*:

> Most notably, the Second Circuit Court of Appeals has held that a collateral
> estoppel defense to arbitration based on a prior federal judgment should be
> decided by an arbitrator because it is a merit-based defense to arbitration.  (*U.S.
> Fire Ins. Co. v. National Gypsum Co*., 101 F.3d 813, 817 (2d Cir. 1996)).
> Whether such a defense is itself arbitrable, like any other ambiguity in the scope
> of the arbitration, must stem from the language of the arbitration agreement itself
> because arbitration is a matter of contract and a "defense based on the issue
> preclusive effect of the prior judgment is part of the dispute on the merits.  (*Id.*)
> Thus, the court reasoned, unless it may be said "with positive assurance" that the
> parties intended to place a collateral estoppel issue with a court, the viability of
> that affirmative defense must be decided by an arbitrator.

(*Id.*)  Citi completely ignores this obviously important distinction pertaining to Second Circuit

case law, carelessly citing *John Hancock* for the proposition that federal courts must, without

exception, "intervene in the arbitration process when faced with any *res judicata* objections

stemming from a prior judgment."  (Preliminary Injunction Memorandum, p. 22).

### III.   THE ARBITRATION CLAUSE OF THE INVESTMENT AGREEMENT UNQUESTIONABLY ENDOWS THE ARBITRATORS WITH EXCLUSIVE JURISDICTION TO DECIDE A *RES JUDICATA*, OR ANY OTHER LEGAL DEFENSE.

Both the ADIA I and ADIA II arbitrations were brought under the broadly-worded

arbitration clause of the Investment Agreement, which states in relevant part:

> If the Company [Citigroup] and the Investor [ADIA] each a "*Disputing Party*"
> cannot resolve <u>any dispute that arises out of or relates to the Transaction
> Documents, or the breach thereof,</u> within 30 calendar days after written notice of
> the dispute specifying in reasonable detail the nature of the dispute is first given,
> such dispute will be decided by arbitration  administered by the American
> Arbitration Associations in accordance with its International Arbitration Rules
> then in effect. . . " [Emphasis added].

"Transaction Documents" is a defined term that includes the Investment Agreement.  (Fagen

Dec. Ex. D, at Para. 5.6 and Recital C.).

The parties negotiated a single, discrete exception to issues subject to arbitration, as follows:

> *except* that (i) Article 37 of the International Arbitration Rules of the American Arbitration Association will not apply and (ii) a Disputing Party seeking a temporary restraining order, or an order to maintain the status quo or to prevent irreparable harm (such remedies being *"Interim Measures"* ) shall only seek such remedy through court proceedings in accordance with Section 5.7 and shall not seek such remedy through arbitration as provided under this Section 5.6.

(Section 5.7, in turn, provides that "any request for Interim Measures' shall be brought in  the "State of Federal Courts of the State of New York" (*Id.*).)

This exception clearly deals with only one issue—interim relief while the arbitration is pending.  It first makes inapplicable Article 37 of the ICDR Rules, which, unless the parties otherwise agree, authorizes a party to seek interim emergency relief after the arbitration has been filed but before the tribunal has been constituted.  An emergency arbitrator is appointed with power to award any interim relief deemed necessary; however, the tribunal, once constituted, has the power to "reconsider, modify or vacate the interim award or order of emergency issued by the emergency arbitrator."  (Article 37, 6.).  Second, it expressly identifies all other matters that are to be resolved by a court as "*Interim Measures*" (*See also* Section 5.7).

The fact that the arbitration clause covers "any" dispute that "arise out of or relates to" the Investment Agreement "or the breach thereof," coupled with the very limited exception to arbitral issues negotiated by the parties, is conclusive proof that the arbitration clause covers a *res judicata* or any other legal defense that Citi might choose to raise to the ADIA II arbitration. There is no question that the arbitration clause is legally binding on Citi, or that ADIA II (which is based on Citi's breaches of the Investment Agreement) falls within the clause—thus, there are no arbitrability issues which the court would be empowered to decide under the FAA.  Citi cannot come close to satisfying the standard of *U.S. Fire* for interpreting the arbitration clause,

which requires Citi to show "with positive assurance" that the parties intended a *res judicata* defense to be decided by a court instead of an arbitrator (*U.S. Fire*, supra, at 816).[5][6]

**IV.   THE CASES CITI DOES CITE IN SUPPORT OF ITS JURISDICTIONAL *RES JUDICATA* ARGUMENT EITHER PRECEDED AND HAVE BEEN EFFECTIVELY OVERRULED BY *NAT'L UNION* AND *U.S. FIRE*, OR ARE COMPLETELY INAPPOSITE.**

**A.   Cases cited by Citi that have been effectively overruled by *Nat'l Union* and *U.S. Fire*.**

Most of the cases cited by Citi in support of its argument that the court should decide the *res judicata* defense pre-date or are concurrent with the Second Circuit's 1996 decisions in *Nat'l Union* and *U.S. Fire*, and therefore, to the extent they are inconsistent with these cases, have effectively been overruled by them. For example, in *Lito Shipping Corp. v. Pioneer Petroleum Products, Inc.*, *supra*, No. 93-CV-778 JSM, 1997 WL 160321, the court also expressly disapproved *Burmah Oil Tankers Ltd. v. Trisun Tankers Ltd.*, 687 F. Supp 897 (S.D.N.Y. 1988)—a case primarily relied on by Citi to support its Preliminary Injunction Motion—as being decided before *Nat'l Union* and *U.S. Fire*. (Preliminary Injunction Memorandum, p. 2 n.2).

---

[5]   Section 5.11 of the Investment Agreement is an integration clause, which provides that the parties' agreement is "the entire agreement, and supersedes all other prior agreements, understandings, representations and warranties, both written and oral, between the parties, with respect to the subject matter hereof. . ." Thus, no modification or additional exception to the arbitration provision regarding the *res judicata* defense may be read into the arbitration clause.

[6]   Article 5.9 of the Investment Agreement, allows a party to "apply to a court of law or equity of competent jurisdiction for specific performance or any injunctive or other equitable relief in order to enforce or prevent any breach or violation of this Agreement." However, this right is "additional to and supplementary of other rights and remedies existing in a party's favor under this Agreement," including the right and obligation to arbitrate any dispute. Thus, it cannot serve as the basis for an action, such as Citi has brought, seeking to enjoin a party's right to initiate an arbitration in the first instance.

**B.**     **Cases cited by Citi that post-date *Nat'l Union* and *U.S. Fire.***

None of the cases cited by Citi that were decided post *Nat'l Union* and *U.S. Fire* lend the slightest support to Citi's argument.  (Preliminary Injunction Memorandum p. 22).  No case even addresses the *res judicata* effect of a prior arbitration award or judgment on a later arbitration, or makes any reference to *Nat'l Union* or *U.S. Fire.*  These cases include the following:

(i)     In *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 500 F.3d 111, 129 (2d Cir. 2007)  the Second Circuit precluded a party from attacking an arbitration award that had been confirmed by the court, via a lawsuit filed in a foreign jurisdiction that attempted to vitiate the award on grounds of fraud.  The Court held that it had general power to issue an anti-foreign-suit injunction in order to prevent a party from "engaging in litigation that would tend to undermine the regime established by the [New York] Convention for the recognition and enforcement of arbitral awards."  The case had nothing to do with whether a court or arbitrator is to decide the merits of a *res judicata* defense.  ADIA is not challenging the propriety of the confirmation of the Award in ADIA I with its new arbitration claim.

(ii)     In *Jock v. Sterling Jewelers, Inc.*, No. 08-CV-2875 JSR, 2010 WL 5158617, at *3 (S.D.N.Y. Dec. 10, 2010) the court enjoined a series of separate arbitrations arising out of the same controversy as a *pending arbitration*, holding that "[A]s a necessary incident to its power to compel arbitration proceedings under § 4 of the FAA, [a court] may preserve the integrity of those proceedings by enjoining later-filed arbitrations that arise out of the same controversy.").  The *res judicata* effect

of the arbitration was not and could not possibly have been in issue, since the arbitration was pending and—obviously—no final award had been issued.

(iii)    In *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 141 n.20 (2d Cir. 2011), *quoting In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 382 (8th Cir. 1994), class plaintiffs brought five separate class actions in the federal district court of New York (S.D.N.Y.) that ultimately were consolidated into one action.  The district court later certified the class, and class notice of a proposed settlement was sent out, giving class members the right to opt out, but explaining that a condition of participation in the settlement was a release of claims.  Two class members later brought a FINRA arbitration against the class action defendants, which in turn filed a motion to stay the arbitration on grounds that it was precluded by the Settlement.  The arbitration panel denied stay, and defendants filed a Motion to Enforce the Settlement Agreement in the district court, requesting an order that the FINRA arbitration be dismissed with prejudice.  The Court granted the motion pursuant to Section 4 of the FAA, holding that the arbitration clause as to the two class members had been *voided* by their decision to participate in the class action settlement:

> The district court concluded that the class settlement barred all of the Belands' arbitration claims, and therefore granted Ameriprise's motion and ordered the Belands to dismiss their FINRA complaint with prejudice.  We conclude that the district court had the power to enter such an order and that Specifically, the Settlement Agreement altered Ameriprise's prior expansive commitment to arbitrate by removing the Released Claims from the scope of that commitment . . . Our decisions do suggest, however, that, at least <u>where the court determines . . . that the parties have not entered into a valid and binding arbitration agreement, the court has the authority to enjoin the arbitration proceedings</u> We confirm and apply those principles here. If the parties to this appeal have not

> consented to arbitrate a claim, the district court was not powerless to prevent one party from foisting upon the other an arbitration process to which the first party had no contractual right . . . It makes little sense to us to conclude that district courts lack the authority to order the cessation of an arbitration by parties within its jurisdiction where such authority appears necessary in order for a court to enforce the terms of the parties' own agreement, as reflected in a settlement agreement.

(672 F.3d at 139-41 (emphasis added).)

Thus, the Court's holding in *American Express* was a clear and proper exercise of its powers under FAA Section 4, and in no way addressed the court's authority to resolve a *res judicata* defense.

**V.     CITI'S ARGUMENT THAT THE COURT IS EMPOWERED TO DECIDE CITI'S *RES JUDICATA* DEFENSE TO "PRESERVE AND PROTECT ITS FINAL JUDGMENTS" IS A RED-HERRING, COMPLETELY DEVOID OF LEGAL SUPPORT.**

Citi alleges that its Complaint is brought pursuant to and supported by its right to "preserve and protect its final judgments" by enjoining the ADIA II arbitration under the All Writs Act (28 U.S.C. § 1651(a), the FAA (without designating any particular section), and its "inherent authority" to protect its judgments. (Compl. ¶¶ 1, 45-47).

There is, however, not a shred of legal support for this argument as grounds for the court deciding a *res judicata* defense to an arbitration claim. Section 1651(a) of the All Writs Act states simply that the courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions," On its face, this provision does not apply when the court's jurisdiction to decide a legal defense to an arbitration claim is itself at issue. Citi has cited no case to support this bizarre interpretation, and in fact the cases discussed above implicitly and necessarily refute it. The *res judicata* effect of prior final judgments was at issue in both *Nat'l Union* and *U. S. Fire*; yet the Second Circuit obviously perceived that those judgments would not be adversely impacted by enforcing the provisions of the FAA and allowing the arbitrators to decide a *res*

21

*judicata* defense.   In fact, Citi itself recognized this in its misconstruction of *U.S. Fire*, suggesting that the court was fully within its rights to allow the arbitrators to decide the *res judicata* impact of a final federal court judgment which had no relation to any prior arbitration proceeding.  (Preliminary Injunction Memorandum, p. 22 n.8).

In like manner, a firmly established body of law within the Second Circuit (discussed above), recognizes that the FAA does not convey an omnibus power of the court to "protect its judgments" without regard to FAA jurisdictional restrictions on the court's arbitration-related powers.   And the case cited by Citi to support the court's alleged "inherent authority" in this regard (Compl. ¶ 47) has nothing to do with deciding a legal defense to an arbitration claim.

## CONCLUSION

Based on the foregoing, ADIA respectfully requests that its motion to dismiss and motion to compel arbitration be granted.


DATED: 9/23/13

QUINN EMANUEL URQUHART &
    SULLIVAN, LLP

By: _____
    Peter Calamari
    Fred G. Bennett
    Tai-Heng Cheng

    Attorneys for Abu Dhabi Investment
    Authority