UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-25-13
```

------------------------------------------------------------x

CITIGROUP, INC.,

                        Plaintiff,

       -against-

ABU DHABI INVESTMENT AUTHORITY,

                        Defendant.

------------------------------------------------------------x

13 Civ. 6073 (PKC)

MEMORANDUM AND ORDER

CASTEL, District Judge:

        Plaintiff Citigroup, Inc. ("Citigroup") commenced this action on August 28, 2013. (Docket # 1.) It asserts one cause of action, which seeks to enjoin an arbitration proceeding recently initiated by defendant Abu Dhabi Investment Authority ("ADIA"), on the grounds that a prior arbitration award in favor of Citigroup, which was confirmed in this District, precludes the newly initiated proceeding. (Docket # 15.) Citigroup also moves for a preliminary injunction to enjoin the new arbitration. (Docket # 16.) Citigroup has not requested an evidentiary hearing on its motion.

        Separately, ADIA moves to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., and to compel arbitration. (Docket # 12.) It argues that Citigroup fails to state a claim upon which relief can be granted because the Complaint is premised on a legal defense of res judicata, which, pursuant to the parties' arbitration agreement, must be determined by an arbitration panel.

        For the reasons explained, under the broad arbitration clause negotiated by the parties at arm's length, the preclusive effect, if any, of the prior arbitration must be determined by arbitrators and not the courts. The Complaint fails to state a claim. Citigroup's motion for a preliminary injunction is therefore denied, and ADIA's motions are granted.

BACKGROUND

      In reviewing the Complaint, the Court accepts all non-conclusory factual allegations as true, and draws every reasonable inference in favor of Citigroup as the non-movant.  See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).

      A.  The Investment Agreement and Its Arbitration Clause.

      ADIA "is a public institution organized and wholly owned by the Government of the Emirate of Abu Dhabi." (Compl't ¶ 7.)  In November 2007, after extensive negotiation between the parties, ADIA invested $7.5 billion in Citigroup.  (Compl't ¶¶ 2, 20.)  The transaction was "intensely negotiated at arm's-length over the course of several days by the parties and their attorneys . . . ." (Compl't ¶ 21.)  Pursuant to the resulting agreement between ADIA and Citigroup (the "Investment Agreement"), ADIA's initial $7.5 billion investment was to be converted into Citigroup common stock on four separate dates between March 2010 and September 2011.  (Compl't ¶ 20.)  Each share would be valued between $31.83 and $37.24, depending on market price at the time of conversion.  (Compl't ¶ 20.)  The Investment Agreement included a provision that would increase the number of shares ADIA received if Citigroup issued more than a specified number of shares in the following year.  (Compl't ¶ 21.)

      The Investment Agreement also included an arbitration clause, which states in relevant part:

> If the Company and/or the Investor (each, a "Disputing Party") cannot resolve any dispute that arises out of or relates to the Transaction Documents, or the breach thereof, within 30 calendar days after written notice of the dispute specifying in reasonable detail the nature of the dispute is first given, such dispute will be decided through arbitration administered by the American Arbitration Association in accordance with its International Arbitration Rules then in effect . . . .

(Fagen Dec. Ex. D § 5.6(a).)  The arbitration clause includes two exceptions, neither of which the parties contend applies here.  (Id.)

       B.  <u>The Parties' Prior Proceedings.</u>

       On December 15, 2009, ADIA first initiated arbitration proceedings against Citigroup.  (Compl't ¶¶ 22-24.)  Broadly summarized, ADIA alleged that Citigroup's issuance of preferred shares to other investors, and those shares' conversion to common stock, diluted the value of ADIA's investment, and that Citigroup also entered into agreements that provided investors more favorable terms than those given to ADIA.  (Citigroup Injunction Mem. at 6-10.)  ADIA asserted claims of common law fraud, securities fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract and breach of the implied covenant of good faith and fair dealing.  (Compl't ¶ 22.)  It sought to rescind the Investment Agreement or, alternatively, more than $4 billion in damages.  (Compl't ¶ 25.)  During the 18-month arbitration proceedings, the parties engaged in extensive discovery and motion practice.  (Compl't ¶¶ 16-19, 28.)  A panel of three arbitrators presided over a 16-day hearing in May 2011, and weighed the testimony of 24 witnesses and nearly 6,000 exhibits.  (Compl't ¶ 19.)  In October 2011, the panel issued "a detailed 84-page award" that rejected ADIA's claims in their entirety (the "Award").  (Compl't ¶¶ 2, 32-35.)

       ADIA then commenced state court proceedings to vacate the Award, which Citigroup removed to this District.  (Compl't ¶ 13; <u>Abu Dhabi Inv. Auth. v. Citigroup, Inc.</u>, 12 Civ. 283 (GBD) (the "First Action").)  Citigroup moved in the First Action to confirm the Award.  In a Memorandum and Order dated March 4, 2013, the Hon. George B. Daniels, U.S.D.J., denied ADIA's motion to vacate the Award and granted Citigroup's motion to confirm.  <u>Abu Dhabi Inv. Auth. v. Citigroup, Inc.</u>, 2013 WL 789642 (S.D.N.Y. Mar. 4, 2013).  The Clerk

entered final judgment the following day.  (Compl't ¶ 14.)  ADIA's appeal is currently pending

before the Second Circuit.  (Compl't ¶ 15.)

        C.  <u>The Parties' Current Proceedings.</u>

        On August 20, 2013, ADIA filed a new Notice of Arbitration against Citigroup,

asserting claims for breach of contract and breach of implied covenant of good faith and fair

dealing -- causes of action that were also raised in the first arbitration.  (Compl't ¶¶ 4, 36-39.)

ADIA seeks $2 billion in damages, or, alternatively, rescission of the underlying stock purchase

agreements.  (Compl't ¶ 40.)  Citigroup commenced the present action, claiming that the second

arbitration is foreclosed by the judgment in the First Action.  (Docket # 15.)  Citigroup also has

moved to enjoin ADIA from pursuing this second arbitration.  (Docket # 16-17.)  ADIA moves

to dismiss the Complaint and to compel arbitration. (Docket # 12.)

        Citigroup characterizes this second arbitration as "an assault" on the confirmation

of the prior arbitration award and "an improper attempt" to prolong litigation.  (Compl't ¶¶ 4-5.)

The Complaint asserts a single cause of action to enjoin the new arbitration, citing the

Declaratory Judgment Act, 28 U.S.C. § 2201, the All Writs Act, 28 U.S.C. § 1651(a) and the

Federal Arbitration Act, 9 U.S.C. § 1, <u>et seq.</u>, as well as this Court's "inherent authority" to

protect its "proceedings and judgments" when discharging its "traditional responsibilities."

(Compl't ¶¶ 44-48, 55.)  As asserted by Citigroup, the new action incorporates facts, theories of

liabilities and proposed remedies that were or could have been raised in the previous arbitration.

(Compl't ¶¶ 50-53.)  "Because ADIA's proposed arbitration improperly seeks to re-litigate

matters that were, or that could have been, litigated in the First Arbitration, it stands in defiance

of this Court's judgment confirming the Award in Citigroup's favor."  (Compl't ¶ 54.)

RULE 12(b)(6) STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  However, "'detailed factual allegations'" are not necessary.  Id. (quoting Twombly, 550 U.S. at 555).[1]

DISCUSSION.

      A.  Under the Parties' Broad Arbitration Clause, the Preclusive Effect of the Prior Arbitration Must Be Determined by Arbitrators and Not the Courts.

Drawing ever reasonable inference in favor of Citigroup, this Court concludes that the preclusive effect, if any, of the parties' previous arbitration must be decided by arbitrators. The Complaint therefore fails to state a claim upon which relief can be granted.

Courts frequently apply the FAA to determine whether an underlying dispute is arbitrable and to enforce arbitration agreements.  See, e.g., In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 127-28 (2d Cir. 2011).  If the underlying claims and defenses fall within the scope of the arbitration clause, they are to be determined by the arbitrators.  See, e.g., Garten v. Kurth, 265 F.3d 136, 142 (2d Cir. 2001).   "As the courts have repeatedly made clear, 'arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration.'"  Alliance Bernstein Inv.

---

[1] ADIA also moves on Rule 12(b)(1), asserting the absence of subject matter jurisdiction.  Despite references to this Court's "jurisdiction" over Citigroup's claim, ADIA's memoranda of law includes no discussion of subject matter jurisdiction, and the Court identifies no apparent defects as to federal subject matter jurisdiction on either federal question or diversity grounds.

Research & Mgmt., Inc. v. Schaffran, 445 F.3d 121, 125 (2d Cir. 2006) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)).  "The FAA is an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'"  Ragone v. Atlantic Video at Manhattan Center, 595 F.3d 115, 121 (2d Cir. 2010) (quoting Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001)); see also Bechtel do Brasil Construcoes Ltda. v. UEG Araucaria Ltda., 638 F.3d 150, 154 (2d Cir. 2011) ("[T]he FAA's primary purpose [is to] ensur[e] that private agreements to arbitrate are enforced according to their terms.") (alterations in original; quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)); Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied.") (internal quotation marks omitted).

Citigroup argues that ADIA's second arbitration is an attack on the final judgment entered in the First Action, and that, by commencing this second arbitration, ADIA seeks to render the courts "powerless" to ensure the integrity of their prior judgments.  (Opp. Mem. at 1, 6-13.)  However, National Union Fire Insurance Company of Pittsburgh, Pa. v. Belco Petroleum Corp., 88 F.3d 129, 131 (2d Cir. 1996), held that "the preclusive effect of a prior, related arbitration between the parties must be determined by the arbitrator in the current arbitration, rather than by the court."  If there is no dispute that a claim falls within the scope of a valid arbitration agreement, then the "claim of preclusion is a legal defense . . . .  As such, it is itself a component of the dispute on the merits."  Id. at 135.  The preclusive effect of a prior arbitration "is as much related to the merits as such affirmative defenses as a time limit in the arbitration agreement or laches, which are assigned to an arbitrator under a broad arbitration clause . . . ."  Id. at 136.  National Union concluded that the underlying arbitration clause was "sufficiently

broad to encompass disputes about what was decided in a prior arbitration," with language that required arbitration for "'[a]ll disputes which may arise under or in connection with this policy.'" Id. (emphasis and alteration in original).

Similarly, in Transit Mix Concrete Corporation v. Local Union No. 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 809 F.2d 963, 965, 968 (2d Cir. 1987), a collective bargaining agreement that provided arbitration for all disputes "in connection with or in relation to this Agreement" required the "inescapable" conclusion that the preclusive effect of a prior arbitration was to be determined by an arbitration panel and not the courts. U.S. Fire Insurance Co. v. National Gypsum Co., 101 F.3d 813, 816-17 (2d Cir. 1996), also concluded that arbitrators and not courts had the authority to decide whether issue preclusion applies to claims that arose in a prior arbitration proceeding.

Courts in this District have repeatedly applied these authorities, and concluded that preclusion is a merits-based defense to be decided by arbitrators. See Emilio v. Sprint Spectrum, L.P., 2008 WL 4865050, at *2 (S.D.N.Y. Nov. 6, 2008) (Jones, J.) (arbitrators must decide preclusion defenses), aff'd, 315 Fed. App'x 322, 324 (2d Cir. 2009) ("the parties clearly intended for the arbitrator to decide a defense of res judicata"); Pontier v. U.H.O. Mgmt. Corp., 2011 WL 1346801, at *3 (S.D.N.Y. Apr. 11, 2011) (Berman, J.) ("Matters reaching the merits of the dispute – including Defendants' res judicata argument raised in its [Rule] 12(b)(6) motion – are to be resolved by the arbitrator."); In re New Jersey Boom & Erectors, Inc., 2001 WL 357087, at *1 (S.D.N.Y. Apr. 9, 2001) (Carter, J.) (so long as a valid arbitration agreement covers the dispute, "matters reaching the merits," including res judicata, "are to be resolved by the arbitrator."); Lito Shipping Corp. v. Pioneer Petroleum Prods., Inc., 1997 WL 160321, at *2 (S.D.N.Y. Apr. 3, 1997) (Martin, J.) ("the res judicata effect of the original arbitration award between petitioners and [respondent] must be decided by the arbitrators, not the district court.")

(citing National Union and U.S. Fire); New York Hotel & Motel Trades Council v. Hotel of St. George, 988 F. Supp. 770, 777 (S.D.N.Y. 1997) (Mukasey, J.) ("permitting a party to litigate the res judicata effect of a prior arbitration award before a court – rather than before an arbitrator – is inconsistent with the proposition that arbitrators have broad discretion to determine the precedential or preclusive effect, if any, to be accorded an issue or claim decided in a prior arbitration.").

Here, Citigroup and ADIA agreed to a broad arbitration clause governing "any dispute that arises out of or relates to the Transaction Documents . . . ." (Fagen Dec. Ex. D. § 5.6(a).) "Transaction Documents" is a defined term in the Investment Agreement, and "refers collectively to this [Investment] Agreement and the Rights Agreement (as defined below)." (Fagen Dec. Ex. D, Recitals.) The Notice of Arbitration filed by ADIA in August 2013 asserts that Citigroup breached the Investment Agreement and its implied covenant of good faith and fair dealing. Citigroup does not dispute that these claims arise out of or relate to the "Transaction Documents."

Consistent with National Union, its related line of authority, and the parties' agreed-upon language in their broad arbitration clause, this Court concludes that the preclusive effect, if any, of the previous arbitration is a defense that is properly heard by an arbitration panel. ADIA's motion to dismiss is therefore granted.

B. Citigroup Has Not Come Forward with a Basis to Enjoin the Arbitration Pursuant to the All Writs Act or Other Federal Statute.

Citigroup argues that an injunction should issue pursuant to the All Writs Act, which grants federal courts the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The All Writs Act is a residual source of authority to issue writs that are not otherwise

covered by statute." <u>Pennsylvania Bureau of Correction v. U.S. Marshals Service</u>, 474 U.S. 34,

43 (1985).  It "empowers federal courts to fashion extraordinary remedies when the need arises,"

but it "does not authorize them to issue ad hoc writs whenever compliance with statutory

procedures appears inconvenient or less appropriate."  <u>Id.</u>

   Footnote 20 to the Second Circuit's decision in <u>In re American Express</u> allows the

possibility that, in certain circumstances, the All Writs Act could permit a court to enjoin an

arbitration.  672 F.3d at 141 n.20 (leaving open the question of whether the All Writs Act

"might" give district courts authority to enjoin arbitration to prevent re-litigation).  In at least one

prior instance, the Second Circuit has cited the All Writs Act as authority to enjoin arbitration.

<u>See</u> <u>Local 1814 Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.</u>, 965

F.2d 1224, 1237-38 (2d Cir. 1992).  There, the Second Circuit enjoined a labor arbitration that

had the potential to undermine a consent judgment between one of the parties and the U.S.

government.  <u>Id.</u>  That consent judgment arose out of civil RICO claims involving organized

crime infiltration of a labor union, and entailed "extensive equitable relief."  <u>Id.</u> at 1226.  The

Second Circuit concluded that an injunction pursuant to the All Writs Act was "necessary and

proper" for "[e]nforcement of RICO's policies," "even when it results in an injunction against

arbitrating . . . ."  <u>Id.</u> at 1238.  One district court, relying on footnote 20 of <u>In re American</u>

<u>Express</u>, temporarily stayed several arbitrations when those later-filed proceedings paralleled

federal litigation and "severely threaten[ed]" multiple inconsistent judgments.  <u>Allstate Ins. Co.</u>

<u>v. Elzanaty</u>, 929 F. Supp. 2d 199, 216-18 (E.D.N.Y. 2013) (Spatt, J.).[2]

---

[2] Citigroup also cites to <u>Evangelical Alliance Mission/Nihon Domei Kirisuto Kyodan v. Lockman Foundation</u>, 1995
WL 688958 (S.D.N.Y. Nov. 21, 1995) (Stein, J.), which enjoined an arbitration on res judicata grounds.  However,
that decision did not rely on the FAA or the All Writs Act, and predated <u>In re American Express</u>.  In addition, the
parties there agreed that the court had the power to enjoin arbitration, and that the arbitration should be enjoined if
res judicata applied to the new claims.  <u>Id.</u> at *2.  There appears to have been no argument that res judicata was to be
determined by arbitration and not the courts.

There are no comparable considerations here.  The possibly preclusive effect of the parties' prior arbitration appears to implicate only garden-variety res judicata concerns.  Although the judgment in the First Action is on appeal, there is no separate, ongoing proceeding at risk of being undermined by the August 2013 Notice of Arbitration.  Citigroup contends that a second arbitration would be an affront to the judgment entered in the First Action, and that application of the All Writs Act is necessary to ensure the integrity of this Court's jurisdiction.  But Citigroup's argument, if accepted, would apply to virtually any instance where a second arbitration is purportedly precluded by a federal court judgment confirming the first arbitration award.  Its proposed approach would swallow the Belco rule.

Citigroup also cites to academic commentary on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards for support of the principle that an international arbitration agreement becomes "inoperative" if the same dispute has already been decided.  (Opp. Mem. at 19-21.)  But as summarized in Citigroup's opposition memo, none of these commentators appears to speak to whether that determination ought to be made by the courts or arbitrators.  ADIA also has cited to Second Circuit authority supporting the principal that, unless directly in conflict with the Convention, the FAA applies to international arbitration.  See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 30 n.2 (2d Cir. 2001).  As described in the Citigroup memo, any such conflict is, at most, theoretical.

This Court concludes that there is no basis for an extraordinary remedy to issue under the All Writs Act.[3]

---

[3] Separately, the Complaint asserts that an injunction should be issued pursuant to the FAA.  It cites to no provision of the FAA that empowers the Court to issue such an injunction.  Indeed, In re American Express, 672 F.3d at 140, concluded that "nowhere does [the FAA] explicitly confer on the judiciary the authority to . . . enjoin a private arbitration."  It recognized a limited exception where "the parties have not entered into a valid and binding arbitration agreement," a circumstance that is not relevant in this dispute.  Id.

C.  ADIA's Motion to Compel Arbitration Is Granted.

In deciding a motion to compel arbitration, courts apply "'a standard similar to that applicable for a motion for summary judgment,'" and require a trial for any disputed facts. Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir. 2012) (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)).  However, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  Bensadoun, 316 F.3d at 176 (quoting John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 58 (2d Cir. 2001)).  Arbitration clauses are construed as broadly as possible.  In re American Express, 672 F.3d at 128.

For the reasons explained, ADIA's motion to compel arbitration is granted.  As alleged in the Complaint, the broad arbitration clause was the product of intensive, arm's-length negotiations between the parties.  The preclusive effect of any prior arbitration proceeding must be decided by an arbitration panel, and there is no basis to enjoin arbitration pursuant to the All Writs Act or the other authorities cited by Citigroup.  Citigroup raises no additional arguments against compelling arbitration.

ADIA's motion to compel arbitration is therefore granted.

CERTAIN OF THE PARTIES' EXHIBITS MAY REMAIN UNDER SEAL

At ADIA's request, the Court provisionally permitted the parties to file certain exhibits in sealed or redacted form, contingent on the parties' satisfaction of the standard announced in Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006). (Docket # 30, 35.)  ADIA contends that these exhibits contain highly confidential proprietary information that would harm the company if disclosed, and that, in addition, many of the exhibits do not qualify as judicial documents under Lugosch.  (See, e.g., ADIA Letter of 11/18/13.)

There is both a common-law and a qualified First Amendment right of public access to judicial documents.  Lugosch, 435 F.3d at 119-20.  "Before any such common law right

can attach, however, a court must first conclude that the documents at issue are indeed 'judicial documents.'" Id. at 119. "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995). "[T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." Id. "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995). "Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." Id. at 1050.

Here, the documents that ADIA seeks to maintain under seal played no role in this Court's adjudication of the parties' respective motions, which turned almost entirely on the Investment Agreement's arbitration clause. An unredacted copy of that agreement has been filed with the Court and is available for public review. (Docket # 31, Ex. B.) This Memorandum and Order also includes broad descriptions of claims raised in the parties' arbitration proceedings. A copy of the Notice of Arbitration dated August 16, 2013 is available for public review (Docket # 18, Ex. L), as is the Notice of Arbitration dated December 15, 2009. (Docket # 28, Ex. 2). The remaining documents were immaterial to the analysis and outcome of the Memorandum and Order, and do not constitute judicial documents for the purposes of Lugosch. Permission is therefore granted to maintain their current status as sealed or redacted.

CONCLUSION

The Court is confident that a panel of arbitrators will be fully competent to apply established principles of claim preclusion to determine, as a threshold matter, whether the second

-13-

arbitration is foreclosed by the judgment in the First Action.  Defendant's motion to dismiss and

compel arbitration is GRANTED.  (Docket # 12.)  Plaintiff's motion for a preliminary injunction

is DENIED.  (Docket # 16.)  The Clerk is directed to enter judgment for the defendant.

       SO ORDERED.

                                        P. Kevin Castel
                                  United States District Judge

New York, New York
November 25, 2013